## Oldfield v. Owens.

Oct. 13, 1942.

184

[black redaction bars]

Ben D. Smith for appellant.

Leonard S. Stephens for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee, Mrs. Nannie Owens, recovered a judgment for $1,500 against Glenn Oldfield for injuries sustained by her in an automobile accident which occurred about 5:45 p. m., May 13, 1941, on U. S. Highway No. 27 several miles north of Whitley City. Appellee was riding in a Ford automobile with her husband and four children, and was returning to her home from Whitley City. In her petition she alleged that one of appellant's trucks, while being driven by his agent and employee and while passing the automobile in which appellee was riding, through the negligence of appellant's employee was caused to collide with her automobile pushing it over a deep fill, resulting in the destruction of her automobile and the infliction of personal injuries to herself. The principal ground relied upon by appellant for reversal of the judgment is alleged error of the trial court in overruling his motion for a directed verdict in his favor, it being his contention that no evidence was introduced which tended to show that one of his trucks driven by one of his employees caused the injury.

Appellant was a contractor and was engaged in hauling gravel from a quarry at Tateville, south of Burnside, to the Yamacraw road which was being improved. The Yamacraw road intersects U. S. Highway 27 at Stearns, south of Whitley City. The distance from the quarry at Tateville to the Yamacraw road is approximately 25 miles. Appellant had been engaged in hauling gravel under his contract for about three months prior to the accident, and on the day of the accident was operating nine trucks. The trucks made three or four round trips a day. Three of the trucks being operated on the day of the accident were painted red, had steel beds, and side boards 8 or 10 inches high on top of the beds. They

are referred to in the evidence as "red dump trucks." Reed Owens, appellee's husband, who was driving her car, testified that as he traveled north on the highway he saw two red dump trucks following him. They were identically alike, and were trucks he had seen hauling gravel along the road for several months. The first truck passed him at or near a curve in the road, and the second truck also attempted to pass him but a transfer truck was approaching from the opposite direction and the second truck turned to the right and the rear part of the truck hit the left front fender and wheel of the Ford automobile causing the driver to lose control. Appellee's automobile ran over a steep bank and turned over. The truck which had caused the accident continued north on Highway 27. Immediately after the accident another red dump truck traveling north appeared on the scene and stopped. Its driver was Victor Ratliff, an employee of appellant. He assisted in extricating appellee from the wrecked car.

Ruth Owens, 11-year old daughter of appellee, was riding in the rear seat of the Ford automobile, and she saw three red dump trucks following them. The first one passed, and the second one started to pass but hit the Ford automobile as it turned to the right to avoid a transfer truck coming from the opposite direction. The accident happened at Marsh's Siding near the home of John Lynch. He saw the red dump truck collide with the Owens car and force it off the road. This truck continued on down the road, but another red dump truck which was following it stopped and its driver assisted Lynch in extricating Mrs. Owens from the wrecked car. Charlie Lynch lived about 75 yards from the place of the accident. He heard a scraping sound and saw the Owens car leave the road and a red dump truck passing it. He went immediately to the scene of the accident, and as he arrived another red dump truck drove up and stopped. The two trucks were similar. Simeon Webb operated a store at Marsh's Siding near the scene of the accident. He went down to the place where Mrs. Owens was injured, but when he arrived the occupants of the wrecked car had been removed. About ten minutes before he went to the scene of the accident he saw three Ford red dump trucks pass his store. Appellant, Glenn Oldfield, testified that on May 13, 1941, he operated nine trucks on U. S. Highway 27 between the quarry at Tate-

ville, in Pulaski county, and Stearns, in McCreary county. Three of the trucks were red, one green, one maroon, and four black. The three red trucks were driven on that date by Charlie Ward, Junior Clevenger, and Victor Ratliff. Two of the red trucks had not arrived at the quarry when the accident happened and were still on the road somewhere south of Tateville. Appellant claimed that other contractors operated trucks similar to his on U. S. Highway 27 between Tateville and Stearns, but he was unable to say that they were being operated on the day of the accident. Charlie Ward testified that he drove one of appellant's red trucks on May 13, 1941, and that he arrived at the quarry on his last trip north about 3:30 or 4 o'clock. Junior Clevenger testified that he was an employee of appellant and operated one of the red dump trucks on May 13, 1941. His last trip north from Stearns was made between 5 and 6 o'clock. Charlie Ward was ahead of him in a red truck and Victor Ratliff was back of him. He and Ratliff were the last to leave the quarry. He loaded his truck first, and when he left Ratliff was loading his truck. This was about 3 p. m. The trip to the Yamacraw road required about one hour and a half. He dumped his load of gravel at Yamacraw and started on his return trip north with Ratliff following. He denied that he collided with an automobile near Marsh's Siding on this trip. Victor Ratliff testified that he operated one of appellant's red dump trucks on May 13, 1941, hauling rock or gravel from Tatevill to Yamacraw. He made his last trip north late in the afternoon and followed the red truck driven by Clevenger. He claimed he was not in sight of Clevenger's truck, but, when asked to state how far ahead of him Clevenger was operating, said: "Not so awfully far." When he reached Marsh's Siding he saw a car turned over on the road, and he stopped and assisted others to take a lady out of the car. Appellant attempted to show that trucks similar to his owned by other contractors were being operated on Highway 27 between Tateville and Yamacraw, but no one testified that they were being operated on the afternoon in question. His own witness, Victor Ratliff, testified that he passed some red trucks at Greenwood in the morning, but said he saw no red dump trucks other than those of appellant thereafter though he made three or four round trips. The proof showed that appellant's trucks were the only ones hauling gravel from the Tateville quarry on May 13.

The foregoing resume of the evidence is a complete answer to appellant's contention that the evidence as to the identity of the truck which struck the Owens car and the agency of its driver was insufficient to take the case to the jury. The proof eliminated practically every doubt, and showed almost conclusively that the truck was appellant's and driven by his employee, Junior Clevenger. The latter said his truck did not collide with the Owens car, and it is very probable that he was unconscious of any contact between the cars. He was driving a heavy, noisy truck and, according to the evidence, the cab of the truck had passed the front end of the Owens car when the rear part of the truck scraped the left front fender. Only a slight blow was required to throw it out of the driver's control. It is a well-recognized rule that there must be evidence from which the jury can reasonably infer that the vehicle causing the injury is owned by the defendant, and that there can be no recovery when it is merely a matter of conjecture, surmise, speculation, or suspicion. Appellant cites and relies upon Spencer's Adm'r v. Fisel, 254 Ky. 502, 71 S. W. (2d) 955, and Towles v. Perkins, 266 Ky. 25, 98 S. W. (2d) 27, in each of which the foregoing rule was invoked. Both cases are clearly distinguishable on their facts from the case before us. In the Fisel case there was no proof that the truck causing the injury, even if owned by Fisel, was being operated at the time and place of the accident by anyone with his authority, consent, or knowledge, or in his business. The proof for Fisel showed that no one was operating a truck belonging to him with his knowledge or consent at the time or place of the accident. In Towles v. Perkins it was said there was not an iota of testimony as to the ownership of the truck or the identity of its driver. A case more in point is Huber & Huber Motor Express v. Martin's Adm'r, 265 Ky. 228, 96 S. W. (2d) 595. In the instant case there was ample proof from which the jury might reasonably infer that the truck causing the injury belonged to appellant and was driven by Junior Clevenger. It is conceded that Clevenger was appellant's employee, and was operating one of appellant's trucks at the time of the accident in the latter's business. The sole question about which it can be said there is a shadow of a doubt is the ownership of the truck causing the injury. The law does not require that every fact and circumstance going to make up a case be proved by direct, positive testimony. The fact in issue

may be established by circumstantial evidence. Here the proven circumstances warranted the inference that the truck which collided with appellee's car was owned by appellant.

Appellant complains because of the introduction of a map which was referred to by several witnesses in their testimony. It was shown that the map was a fair representation of the road at the point where the accident occurred, and of the location of the vehicles at the time of the collision. It is not pointed out in what manner its introduction was prejudicial.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.