ALLEN GILBRETH V. THE STATE.

No. 15797. Delivered June 21, 1933.
Rehearing Denied October 18, 1933.
Reported in 63 S. W. (2d) 560.

The opinion states the case.

*J. H. Beavers,* of Longview, and *Sanders & McIntosh,* of Gilmer, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for two years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Truman Snider by cutting him with a knife.

Eston Snider, brother of deceased, and Fletcher Green had had a difficulty with Clifton Gilbreth, brother of appellant. De-

ceased came upon the scene of the difficulty. While he was present appellant came down the road with an open knife in his hand. Engaging in the fight, appellant cut two or three of the parties and fatally stabbed deceased. It was in evidence on the part of the state that deceased was making no demonstration and was not engaged in the fight at the time he was stabbed. The foregoing is a brief statement of the testimony adduced by the state.

Testifying in his own behalf, appellant denied that he cut deceased. He declared that when he reached the scene of the difficulty several of those present were cursing his brother, Clifton Gilbreth, and that deceased was running toward the parties, pulling off his coat. He testified that some of the parties attacking his brother had a jack and a pump in their hands. He said he tried to persuade them to desist, and that someone struck him on the head. He testified, further, that he did not remember whether he fell to the ground, but that he lost consciousness for a moment.

Bill of exception No. 1 relates to the action of the court in denying appellant's request that the order setting the case for trial be set aside and the cause postponed. It appears from the bill that the Hon. Walter G. Russell, Judge of the Seventh Judicial District, was district attorney at the time the indictment in the present case was returned, and had represented the state before the grand jury during the investigation of the charge against appellant. Before the case was set for trial the Hon. Walter G. Russell had qualified as district judge. A judge of another district was called upon, and presided in the present trial. Prior to the trial, however, the Hon. Walter G. Russell had entered an order setting the cause down for the date upon which the trial was had. This was the only order he entered in the case. He ordered no special venire and took no other steps in connection with the trial. It is appellant's position that the order setting the case for trial was void, and that he was entitled to a postponement and a new setting. If at the time the case was set for trial a special venire had been ordered a serious question would be presented. See Taylor v. State, 195 S.W., 1147. However, the setting of the case is deemed to be one of the incidental orders which the disqualified judge might make. Taylor v. State, supra, and authorities cited.

It is shown in bill of exception No. 2 that Fletcher Green, a witness for the state, testified that after deceased was cut he observed the father of deceased grab appellant by the leg, and that thereafter appellant's wife and brother also took hold of

him. After giving this testimony the state elicited from the witness that appellant was trying to get back to deceased. Appellant's objection to the statement last mentioned raises the question as to whether the statement was a mere conclusion. On page 51 of the statement of facts it is shown that Aaron Snider, the father of deceased, testified, without objection on the part of appellant, as follows:

"We started then to bring Allen (appellant) back across the bridge; we were on the other side of the culvert at that time. Yes, Clifton was with him, as well as myself. When we got across the bridge, Truman (deceased) hollered for me to do something for him. I turned Allen aloose, then he made the remark to let him go back and finish the job, and I ducked down, got him by one leg and pulled him back, something like ten or twelve feet, then turned loose and went to Truman. * * * Yes, sir, after I grabbed him by the leg, then Clifton and his wife, Fannie, later got hold of him, but I did not pay any attention to what they did from then on. I turned my attention to my son, Truman."

In connection with the statement that appellant was trying to get back to deceased, the witness Green testified, without objection on the part of appellant, as shown on page 22 of the statement of facts, as follows:

"He (appellant) tried to get loose and said 'Just wait a minute; I will go back and finish the d—n s— of a b—.'"

It is well settled that when the opinion is the mere shorthand rendering of the facts it may be given in evidence, subject to cross-examination as to the facts on which it was based. Branch's Annotated Penal Code, sec. 132; Meyers v. State, 37 Texas Crim. Rep., 210, 39 S. W., 111; Williams v. State, 60 Texas Crim. Rep., 453, 132 S. W., 348. However, an opinion or impression which is a mere guess is not admissible. Branch's Annotated Penal Code, sec. 132; Taylor v. State, 41 Texas Crim. Rep., 149, 51 S. W., 1106. Considered in the light of the other testimony given by the witness Green, we think that the statemen in question should be classified as a shorthand rendition of the facts. In Fleming v. State, 274 S. W., 616, in her dying declaration, the deceased stated that the accused came into the dining room and tried to get her boy to go with him. In the same connection, she declared that her son would not go, and that the accused *tried to force him to go.* This court reached the conclusion that when the underscored declaration was considered in the light of the context it should be classified as a shorthand rendition of the facts. In any event, the statement

of the witness Aaron Snider, which was received without objection on the part of appellant, appears to have carried to the jury substantially the same information as the testimony to which appellant objected. As pointed out, this witness testified that after appellant requested that he be permitted to go back and "finish the job" he (the witness) grabbed appellant by the leg and pulled him back something like ten or twelve feet. It is a general rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by other evidence which was not objected to. 4 Tex. Jur., sec. 414, p. 587; Lawler v. State, 9 S. W. (2d) 259; Holder v. State, 18 S. W. (2d) 661; Anderson v. State, 8 S. W. (2d) 124.

Our discussion of bill of exception No. 2 is applicable to bill No. 3.

It appears from bill of exception No. 4 that state's witness Green was permitted to testify, over appellant's objection, that it was his opinion that Clifton Gilbreth, brother of appellant, was drinking on the occasion of the difficulty. The objection was that it was not shown that appellant knew that his brother had been drinking; and, further, that evidence of such fact was irrelevant and immaterial. It is unnecessary to determine whether there was error in receiving the testimony. As shown on page 17 of the statement of facts, appellant elicited from state's witness Harris, on cross-examination, the following testimony: "Yes, sir, I passed right on not thinking about any difficulty or anything. I never saw anything out of the way with these parties (meaning Clifton Gilbreth, brother of appellant, and two negro men), when we met them only they were drinking a little bit. No, no sir, that was not my idea and judgment; they actually showed it; I was judging by their actions." The witness was referring to having observed the parties near the scene of the difficulty shortly before deceased was stabbed. His testimony pointedly referred to Clifton Gilbreth, the brother of appellant, and the negro men who were with him. Moreover, it was shown in the testimony of state's witness Green, without objection on the part of appellant, that when he met Clifton Gilbreth immediately before the difficulty Clifton sent one of the negroes after "something to drink.." Thus it is seen that testimony substantially the same as that under consideration was elicited by appellant and went to the jury without appellant's objection. The authorities we have cited under our discussion of bill of exception No. 2 are applicable.

It is shown in bill of exception No. 5 that after being re-

moved to a hospital deceased made the following statement to his mother:

"Mama, I am doing no good. I would not have thought Allen (appellant) would have treated me this way. I never harmed him in my life. Did not even know he was there until he ran up beside me and cut me. After he cut me I turned around and hit him three licks on the head with my fist."

As a predicate for introducing the foregoing declaration, the state proved by the mother that deceased said to her "Mama, I am doing no good. Mama, I won't ever get well." Further, the witness testified that deceased appeared to be rational when he was talking to her. The bill of exception embraces several objections to the dying declaration, among them being that it was not shown that deceased was conscious of approaching death and believed there was no hope of recovery. It is appellant's position that the statement by deceased "I won't ever get well," was insufficient to show that he was conscious of approaching death. It appears that after deceased made the declaration he was carried to his home and lingered for several days before he died. We think the predicate was sufficient. It is stated in Underhill's Criminal Evidence, 3d Ed., sec. 172, in effect, that if the deceased states that he can not get well, or uses similar expressions, it is presumed that "he has a full and real sense of approaching death." In Scoggin v. State, 159 S. W., 211 (Supreme Court of Arkansas), the deceased told the witness testifying to the dying declaration that he (deceased) would not get well. The court held the predicate sufficient to show that deceased was conscious of approaching death, and believed there was no hope of recovery. The length of time elapsing between the making of the statement and the date of the death did not conclude the matter, nor render the declaration inadmissible. Walker v. State, 227 S. W., 308, and authorities cited.

Appellant interposed a further objection to the dying declaration to the effect that it was not sufficiently shown that deceased was rational at the time he made the statement. He predicated this objection on the general statement of deceased's mother that "at times deceased seemed to know everything, and there were times he did not." The witness stated, however, that at the time deceased made the statement to her he "seemed to know everything." We think that the predicate was sufficient to warrant the trial court in permitting the declaration to go to the jury.

A charge on circumstantial evidence was not required. In his dying declaration deceased stated that appellant stabbed him.

A careful examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant urges error on our part in disposing of his bill of exception No. 2. The record has been re-examined. We have carefully gone over the testimony of state witness Fletcher Green and fail to find therein the statement set out in said bill of exception as objectionable to appellant,—but we do find the statement quoted in the opinion of Judge Christian in passing on this bill. No language of witness Green is quoted in the bill as same appears in the record. If in the preparation of said bill appellant intended to set out the substance of the statement quoted by Judge Christian in his opinion, we observe that the exact language of said witness as quoted, would be of wholly different legal import from the statement in the bill of exception, and would furnish no ground for any claim that such statement was but the conclusion of Green. However, if we give effect to the holding that in case of conflict between a statement of facts and a bill of exception, the latter must control,—we would still be compelled to hold the complaint of appellant not sufficient to call for reversal for the reason, in addition to what we set out in our former opinion, that there can be no possible injury to appellant because the same testimony appears in another part of the record admitted without objection. We note that upon cross-examination of witness Green by appellant he said as follows:

"Allen was trying to get back and Aaron grabbed him. Yes, sir, Aaron had hold of Allen's leg; Clifton and his wife both had hold of him, and he was trying to get back to the boy. * * * Yes, Truman was cut before that but he was trying to get back to him; Allen was trying to get back."

It being thus apparent that appellant's counsel brought out from the witness Green, without any sort of objection, the identical expression of the witness' opinion that appellant "was trying to get back" to deceased, which the bill asserts was admitted over objection, the rule stated in our former opinion applies. Cases applicable are cited in Machado v. State, 112 Texas Crim. Rep., 540.

As to the admission of the dying declaration of deceased, we observe that it is not contradicted that appellant cut deceased. It is shown that the knife used penetrated the lung. Deceased was taken to a sanitarium. The doctor who treated him swore that the knife wound was the proximate cause of death, and that deceased would have died even under proper treatment. Death came the twelfth day after the cutting. While in the sanitarium, the exact date not appearing, deceased talking to his mother said that he would never get well, and told how the cutting occurred.

In renewing the complaint of our upholding the trial court's admission of such dying declaration, appellant cites Hale v. State, 16 S. W. (2d) 1068; Walker v. State, 206 S. W., 96; Ex parte Meyer, 33 Texas Crim. Rep., 204; Irvy v. State, 7 S. W., 705, and Ledbetter v. State, 5 S. W., 226. These have been examined. In Hale's case the proof of belief by the injured man that he would die from the injury rested only on his statement after he was hurt,—that he did not think he could stand it much longer. In Walker's case a man shot in September, made a statement in November, and died in December six or seven weeks after making the statement. It was shown that during his illness and after the injury deceased several times thought he was going to get well. The witness by whom the state attempted to lay its predicate for the admission of the dying declaration, testified that before the statement was made "Deceased thought he was going to die." Just why witness thought deceased thought he was going to die, or when he thought he was going to die, does not appear from the opinion. Discussing the sufficiency of this as a predicate for the admission of the declaration, Judge Davidson says:

"It is a certainty that he would die at some time, whether from this wound or other cause, but that fact would not justify the introduction of the dying declaration under the circumstances here detailed. He must believe at the time he makes the statement that he is going to die, and die by reason of the wound inflicted, and that he could not recover from it."

This is a sound declaration of law. Death is certain, which fact is known to liars and perjurers, as well as men of truth and veracity. It is the belief of IMPENDING death as the result of an injury, the wrongfulness of which lies at the root of the prosecution, which determines the admissibility of a statement offered as a dying declaration. We do not think the authorities cited by appellant hold contrary to what we said in our former opinion. In the case at bar the man who was cut, and in a hos-

pital as a result of said injury, and a few days before his death, said: "I wont ever get well." We have no doubt of the admissibility of the declaration. The other concomitants of a dying declaration were sufficiently shown.

The motion for rehearing will be overruled.

*Overruled.*